## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ADRIAN HARRIS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 13-440-GPM |
| | ) | |
| COOPER B-LINE, INC., | ) | |
| INTERNATIONAL ASOCIATION OF | ) | |
| MACHINISTS AND AEROSPACE | ) | |
| WORKERS, and WAYNE HENZE, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter came before the Court on July 22, 2013 for hearing on Plaintiff Adrian Harris's motion to remand (Docs. 17, 18); Defendant Cooper B-Line, Inc.'s motion to dismiss (Docs. 12, 13); and Defendant Wayne Henze's motion to dismiss (Docs. 15, 16).   For the following reasons, and for those set forth on the record, Plaintiff's motion to remand is denied; Defendant Cooper's motion to dismiss is granted; and Defendant Henze's motion to dismiss is granted.

### BACKGROUND

Plaintiff Adrian Harris, an African American, was employed by Cooper B-Line, Inc. ("Cooper") as a junior welder and he was a member of the International Association of Machinists and Aerospace Workers, District No. 9 ("District 9").   Defendant Wayne Henze was Plaintiff's direct supervisor.   In his complaint, Plaintiff claims that Henze held Plaintiff to a higher standard and issued him written warnings for minor mistakes that white co-workers were not warned about

(Doc. 14-1).   Plaintiff also claims that Henze and others falsely accused Plaintiff of threatening a co-worker and brandishing a gun in the parking lot of Cooper's facility (Doc. 14-1).   According to Plaintiff, Cooper immediately terminated him without conducting an investigation into the accusations (Doc. 14-1).   Plaintiff claims he was escorted from the facility by two uniformed police officers (Doc. 14-1).   Plaintiff also claims that after he was terminated, Cooper posted a photograph of Plaintiff in its facility "which was essentially a Wanted Poster" that suggested Plaintiff was armed and dangerous (Doc. 14-1).

Plaintiff originally filed a five count complaint in the Circuit Court of the Twentieth Judicial Circuit in St. Clair County, Illinois on April 1, 2013 (Docs. 2, 14).   Plaintiff asserted a claim for race discrimination under the Illinois Human Rights Act ("IHRA") against both Cooper (Count 1) and District 9 (Count 2).   Plaintiff also filed claims for breach of contract and for intentional infliction of emotional distress against Cooper (Counts 3, 4), and a claim for intentional interference with an economic advantage against Henze (Count 5) (Doc. 14-1).

District 9 removed the case to this Court (Doc. 2), and Cooper and Henze filed their consent to removal (Doc. 6).   Plaintiff then filed a motion to remand the case back to the Circuit Court of St. Clair County, Illinois (Docs. 17, 18), to which Defendants Cooper, Henze, and District 9 each filed a response (Docs. 20, 23).   Additionally, Defendant Cooper filed a motion to dismiss Counts 1, 3, and 4 pursuant to Rules 12(b)(1) and 12(b)(6) (Docs. 12, 13), and Defendant Henze filed a motion to dismiss Count 5 pursuant to Rule (12(b)(6) (Docs. 15, 16).   Plaintiff filed a response to both motions to dismiss (Docs. 19, 22).

## DISCUSSION

### I. Plaintiff's Motion to Remand

As an initial matter, the Court addressed Plaintiff's motion to remand to determine whether the case had been properly removed. *Avila v. Pappas,* 591 F.3d 552, 553 (7th Cir. 2010) ("The first question in every case is whether the court has jurisdiction."); *McCready v. White,* 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject matter jurisdiction is the court's first duty in every lawsuit.")

In its notice of removal, District 9 asserted that federal jurisdiction was appropriate because Plaintiff's state law discrimination claim in Count 2 of the complaint was completely preempted by § 301 of the Labor Management Relations Act ("LMRA") (Doc. 14). District 9 further asserted that Count 2 was also completely preempted by the federal law duty of fair representation (Doc. 14).

Under the doctrine of complete preemption, when a federal law wholly displaces an area of state law, a plaintiff's claim pleaded in terms of the state law is in reality based on federal law. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). Thus, state-law claims which are completely preempted are properly removable to federal court. *Id.* Federal courts have interpreted § 301 of the LMRA as preempting state law claims that deal directly with "rights created by collective-bargaining agreements" or claims that are "substantially dependent upon analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). Additionally, an employee's state law claims against his union, challenging the union's alleged deficient representation of him in disputes with his employer, are preempted by the federal law duty of fair representation. *Marrero v. Modern Maintenance Bldg. Services, Inc.,* 318

F.Supp.2d 721, 724 (E.D. Wis. 2004), *citing Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *see also*

*Nelson v. Stewart*, 422 F.3d 463, 470 (7th Cir. 2005) ("We may assume for purposes of our

decision today that our sister circuits have decided correctly that a union's

implied duty of fair representation involving a section 301 contract effects complete

preemption.").

The Court agrees that Count 2 of Plaintiff's complaint is completely preempted by the

federal law duty of fair representation.  This duty requires the union "to serve the interests of all

members without hostility or discrimination toward any, to exercise its discretion with complete

good faith and honesty, and to avoid arbitrary conduct."  *Vaca*, 386 U.S. 171 at 177.  Plaintiff

alleged that while he was working at Cooper B-Line, the company and his supervisor

discriminated against him due to his race, however, District 9 did not file a grievance over the

purported discrimination or take any other action to enforce Plaintiff's rights (Doc. 14-1).

Plaintiff further alleged that District 9's failure to take action to protect him from racial

discrimination constituted racial discrimination itself (Doc. 14-1).  Plaintiff's allegations clearly

raise the question of the adequacy of District 9's efforts on his behalf and whether District 9

violated its duty to represent him fairly and without discrimination.  In other words, Plaintiff's

allegations fall squarely within the parameters of the duty of fair representation.

Accordingly, the Court finds that Count 2 is preempted by the federal law duty of fair

representation, and thus was properly removed.  The Court also finds that Plaintiff's other claims

in Counts 1, 3, 4, and 5 are so closely related to his claims in Count 2 that they are part of the same

case or controversy, and exercising supplemental jurisdiction over those claims is appropriate

under 28 U.S.C. § 1367(a).  For those reasons, Plaintiff's motion to remand is denied.

## II.     Defendant Cooper B-Line, Inc.'s Motion to Dismiss

Having determined that this action was properly removed and the Court had jurisdiction over the matter, the Court turned to Defendant Cooper's motion to dismiss Counts 1, 3, and 4.   As discussed below, Defendant Cooper's motion to dismiss is granted; Counts 1 and 3 are dismissed *without* prejudice, and Count 4 is dismissed *with* prejudice.

### A.  Count 1 for racial discrimination in violation of the Illinois Human Rights Act

In Count 1, Plaintiff alleged that Cooper violated the IHRA by discriminating against him based on his race (Doc. 14-1).   However, Plaintiff admitted that he did not satisfy the administrative procedures set forth in the IHRA before filing his discrimination claim against Cooper (Doc. 19).   For that reason, Plaintiff voluntarily agreed to dismiss Count 1 (Doc. 19). Accordingly, Count 1 is dismissed without prejudice.  *Greene v. Meese,* 875 F.2d 639, 643 (7th Cir. 1989) ("[T]he proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice . . . .")

### B.  Count 3 for breach of contract

In the complaint, Plaintiff alleged that Cooper breached their employment contract with him by discriminating against him based on his race and terminating him (Doc. 14-1).   Plaintiff further alleged that the employment contract at issue was Cooper's non-discrimination policy which was separate and distinct from the CBA (Doc. 14-1).

The Court finds that Count 3 should be dismissed.   It appears that Plaintiff was a member of the union and operating under the CBA at the time he was given a copy of the purported non-discrimination policy.   While Plaintiff did not present any evidence to establish the existence of the alleged non-discrimination policy or to define the express terms of the policy, based on

Plaintiff's allegations, it is clear to the Court that the alleged policy and the CBA dealt with the same subject matter: non-discrimination. "Because a side agreement between a union member and an employer concerning work covered by the CBA is only effective insofar as it accords with the CBA," Plaintiff's claim for breach of the non-discrimination policy "is thus effectively a claim for breach of the CBA." *McCarty v. Reynolds Metals Co.*, 883 F. Supp. 356, 362 (S.D. Ind. 1995), *citing Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997–98 (9th Cir. 1987). *See also Costa v. Verizon New Jersey, Inc.*, Case No. 12-CV-3424, 2013 WL 1288187, at *3–5 (D.N.J. Mar. 27, 2013); *Carter v. Tyson Foods, Inc.*, Case No. 08-CV-209, 2009 WL 4790761, at *9–10 (N.D. Ind. Dec. 3, 2009). Therefore, the resolution of Plaintiff's claim "would necessarily involve interpretation of the CBA and examination of 'the practices and customs of a workplace whose conditions are governed by a CBA.'" *McCarty*, 883 F.Supp. at 362, *quoting Jones v. General Motors Corp.,* 939 F.2d 380, 383 (6th Cir. 1991). Accordingly, this Court finds that the Plaintiffs' state law contract claim is preempted by § 301 of the LMRA.

Because the Court concludes that Plaintiff's breach of contract claims arises under § 301, it must consider whether Plaintiff can maintain an action under that provision. While an employee may bring suit against his employer for breach of a CBA, when the governing CBA contains a grievance and arbitration provision, the employee is first required to exhaust the contractual remedies before seeking judicial relief. *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (7th Cir. 2001). In this case, there is no dispute that the CBA contains a valid and enforceable grievance provision compelling Plaintiff to arbitrate his claim. Furthermore, such arbitration is currently underway, but has not concluded. As such, Plaintiff has not exhausted the contractual remedies set forth in the CBA, and his breach of contract claim is dismissed without prejudice.

### C.  Count 4 for intentional infliction of emotional distress

In the complaint, Plaintiff alleged that Cooper was liable for intentional infliction of emotional distress ("IIED") because of its actions, including terminating Plaintiff without an investigation, having the police escort him off the property, and hanging a poster suggesting Plaintiff was armed and dangerous (Doc. 14-1).   However, the Court finds that Count 4 should be dismissed because it is preempted by the IHRA.

The IHRA preempts common law tort claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself*." Johnson v. Chicago Bd. of Educ.*, Case No. 00 C 1800, 2002 WL 1769976, at *4 (N.D. Ill. Aug. 1, 2002), *quoting Maksimovic v. Tsogalis,* 687 N.E.2d 21 (Ill. 1997).   Claims of intentional infliction of emotional distress are not categorically preempted by the IHRA.   *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602, 603 (7th Cir. 2006).   To determine whether a claim is preempted by the IHRA, the inquiry is *not* whether the facts that support Plaintiff's intentional infliction of emotional distress claim could also have supported a discrimination claim.   *Id.* at 604.   Rather the proper inquiry is whether Plaintiff can prove the elements of intentional infliction of emotional distress independent of the legal duty not to discriminate against Plaintiff.   *Id.*

In the instant case, Cooper's actions that form the basis of Plaintiff's IIED claim are the *exact* same actions that form the basis of his race discrimination claim.   Because the facts do not show any actions other than the alleged discrimination, or support a finding that Cooper violated any legal duty aside from their duty not to discriminate, Plaintiff's IIED claim depends entirely on his race discrimination claim.   *But see Naeem*, 444 F.3d at 605 (holding IIED claim was not preempted where plaintiff's claim consisted of the same facts that supported her sex discrimination

claim, but also additional facts that defendant created impossible deadlines, set up obstacles to her performing her job, and sabotaged her work). Therefore, the IHRA preempts Plaintiff's IIED claim, and Count 4 is dismissed with prejudice.

### III.     Defendant Wayne Henze's Motion to Dismiss

In the complaint, Plaintiff alleged that Henze intentionally interfered with an economic advantage by impeding his promotion from junior welder to welder (Doc. 14-1). Plaintiff stated, in part, that Henze and others falsely accused him of threatening a co-worker and waving a gun in the parking lot (Doc. 14-1). According to Plaintiff, Henze did not want Plaintiff to be a welder because he is black, and Henze made the false accusations to purposefully prevent Plaintiff from becoming a welder (Doc. 14-1).

Henze argues that Plaintiff's claim arises out of the same facts as Plaintiff's discrimination claim, and therefore, the tortious interference claim boils down to a race-based discrimination claim, which is preempted by the IHRA. (Doc. 16). However, the Court disagrees. The allegation that Henze falsely accused Plaintiff of threatening a co-worker and brandishing a gun is *not* inextricably linked to the civil rights claim. While Plaintiff alleged Henze made the false accusation for discriminatory reasons, the behavior would still be a tort even if the motivation was not discriminatory. *Compare Adelman-Reyes v. Saint Xavier Univ.*, Case No. 05 C 3269, 2005 WL 2978714, at *3–5 (N.D. Ill. Nov. 3, 2005) *and Packard v. TCF Nat'l Bank*, Case No. 04 C 5130, 2005 WL 1323394, at *2–3 (N.D. Ill. May 31, 2005), *with Travis v. City of Chicago*, Case No. 10 C 3011, 2012 WL 2565826, at *6 (N.D. Ill. June 29, 2012) *and Harrison v. Addington*, 955 N.E.2d 700, 709 (Ill. App. Ct. 2011). Because the intentional interference claim based upon Henze's false accusation could exist even in the absence of the racial discrimination claim, it is not

preempted by the IHRA.

While Plaintiff's tortious interference claim is not preempted by IHRA, it still cannot survive in its current form. Plaintiff pleaded a claim for "intentional interference with a prospective economic advantage" (Doc. 14-1), however, this is the wrong cause of action. Intentional interference with a prospective economic advantage is the cause of action for at-will employees who are terminated because of the unjustified actions of another. *See, e.g., Phillips v. Quality Terminal Servs., LLC*, 08-CV-6633, 2009 WL 4674051, at \*9 (N.D. Ill. Dec. 4, 2009); *Sgouros v. Diamond Park Fine Jewelers, Div. of Zale Corp.*, 88 C 9897, 1990 WL 119421, at \*4 (N.D. Ill. Aug. 13, 1990). Plaintiff was not an at-will employee because he was employed under a CBA, and could only be terminated for just-cause. Therefore, his cause of action lies in the tort of interference with a contractual relationship. While specifying the incorrect legal theory is not fatal in and of itself to Plaintiff's claim, *Williams v. Seniff,* 342 F.3d 774, 792 (7th Cir. 2003) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal"), the allegations of the complaint do not support the tort of interference with a contractual relationship.

Accordingly, Plaintiff is given leave to amend count 5 to state a claim for tortious interference with a contractual relationship. In doing so, Plaintiff should keep in mind not only the elements of the cause of action for tortious interference with a contractual relationship, but also the requirements for holding a supervisor liable for such interference.

## CONCLUSION

For all of the reasons set forth above, Plaintiff Adrian Harris's motion to remand (Doc. 17) is **DENIED**. Defendant Cooper B-Line, Inc.'s motion to dismiss (Doc. 12) is **GRANTED**;

Counts 1 and 3 are dismissed *without* prejudice, and Count 4 is dismissed *with* prejudice. Defendant Wayne Henze's motion to dismiss (Doc. 15) is **GRANTED**; Count 5 is dismissed *without* prejudice.  Plaintiff is given 21 days from the entry of this order to file an amended complaint.

       **IT IS SO ORDERED.**

       DATED:   July 24, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge
