IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ADRIAN HARRIS,

        Plaintiff,

    v.

COOPER B-LINE, INC., MACHINISTS NO. 9
and WAYNE HENZE,

        Defendants.

Case No. 3:13-cv-440-JPG-DGW

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Wayne Henze's Motion to Dismiss Count II
of Plaintiff's Amended Complaint (Doc. 40).  Plaintiff responded by requesting that the Court
deny Defendant Henze's Motion to Dismiss and remand the case to the Circuit Court of St. Clair
County (Doc. 46).  Henze has replied to Plaintiff's response (Doc. 49).

For the following reasons, the Court grants Henze's Motion to Dismiss and dismisses
Count II of Plaintiff's Amended Complaint (Doc. 32).

## BACKGROUND

Plaintiff Adrian Harris, an African American, was employed by Cooper B-Line, Inc.
("Cooper") as a junior welder and a member of the International Association of Machinists and
Aerospace Workers, District No. 9 ("District 9").  Defendant Wayne Henze was Plaintiff's direct
supervisor at Cooper.  Pursuant to the "Labor Agreement between Machinists District No. 9 and
Cooper B-Line, Inc.," Plaintiff was entitled to job protection and had the right to be free from
racial discrimination in the workplace (Doc. 32, p. 2).

While employed at Cooper, however, Plaintiff claims he was held to a higher

performance standard than white workers and was issued warnings for minor mistakes that his white co-workers were not similarly warned about (Doc. 6-2).  Plaintiff also claims that Henze and others falsely accused him of threatening a co-worker and waving a gun in the parking lot of Cooper's facility (Doc. 6-2).  Plaintiff alleges that Cooper abruptly fired him without conducting a fair and impartial investigation, had Plaintiff escorted from the facility by two police officers, and posted a sign at its facility "which essentially was a Wanted Poster" suggesting that Plaintiff was armed and dangerous (Doc. 6-2).

Plaintiff filed a five-count complaint in the Circuit Court of the Twentieth Judicial Circuit in St. Clair County, Illinois (Doc. 6-2), asserting claims for racial discrimination under the Illinois Human Rights Act ("IHRA") against Defendants Cooper and District 9, claims for breach of contract and for intentional infliction of emotional distress against Defendant Cooper, and a claim for intentional interference with an economic advantage against Defendant Henze.

Upon removal to federal court, each of Plaintiff's original claims was dismissed except for his employment discrimination claim against Defendant District 9, which was determined to be preempted by the federal law duty of fair representation (Doc. 31).  The Court also granted Plaintiff leave to amend his claim against Defendant Henze, as Plaintiff's claim of tortious interference with a prospective economic advantage was "the wrong cause of action." (Doc. 31, p. 9).  The Court suggested that Plaintiff try again but this time with a claim against Defendant Henze for tortious interference with a contract (Doc. 31).

Plaintiff accordingly filed a two-count amended complaint with the Court (Doc. 32). Count I of Plaintiff's Amended Complaint, alleging employment discrimination on the basis of race against Defendant District 9, was dismissed without prejudice for failure to exhaust administrative remedies (Doc. 47).  Count II, alleging tortious interference with a contract

against Defendant Henze, is all that remains before the Court.

Defendant Henze filed a motion to dismiss Count II of Plaintiff's Amended Complaint (Doc. 40), arguing that dismissal is proper because (1) Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), preempts Count II, (2) Plaintiff has failed to allege sufficient facts to support the essential elements of his tortious interference claim, and (3) because Defendant Henze's communication to Cooper management officials, if it even occurred, would be privileged under Illinois law.

## DISCUSSION

The central question now before the Court is whether Plaintiff's tortious interference claim is superseded by the exclusive federal jurisdiction created by Section 301, and if so, whether Section 301's preemptive force requires dismissal of Plaintiff's claim.

### "Arising Under" Federal Jurisdiction

Federal district courts hold "original jurisdiction of all civil matters arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if it meets the "well-pleaded complaint" rule, whereby federal law appears on the face of a plaintiff's complaint. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). The policies surrounding this rule are clear: "that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar,* 482 U.S. at 398-99.

Even if the well-pleaded complaint rule is not met, an action may arise under federal law if the state law at issue is "completely preempted" by federal law. This occurs when "the preemptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state

common-law complaint into one stating a federal claim for purposes of the well-pleaded

complaint rule.'" *Nelson v. Stewart,* 422 F.3d 463, 466-67 (7th Cir.2005) (quoting *Caterpillar,*

482 U.S. at 393). Following complete preemption, "any claim purportedly based on that

preempted state law is considered, from its inception, a federal claim, and therefore arises under

federal law [thereby authorizing removal]." *Nelson,* 422 F.3d at 467. While complete preemption

represents a very narrow exception to the well-pleaded complaint rule, the Supreme Court has

upheld its application to the LMRA. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*

*& Aerospace Workers,* 390 U.S. 557, 559-60 (1968).

**The Labor Management Relations Act and Complete Preemption**

Here, the assertion raised by Defendant Henze in his Motion to Dismiss Count II of

Plaintiff's Amended Complaint (Doc. 40) is that Plaintiff's tortious interference claim is

completely preempted by the LMRA and therefore should be dismissed. Section 301 of the

LMRA mandates federal adjudication of all claims – including those ostensibly grounded in state

law – that require substantial interpretation of a collective bargaining agreement ("CBA") for

resolution. 29 U.S.C. § 185(a); *see, e.g., Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 213

(1985) (holding that Section 301 completely preempts any state-law "tort claim ... inextricably

intertwined with consideration of the terms of [a] labor contract"); *Local 174, Teamsters,*

*Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.,* 369 U.S. 95, 104 (1962)

(recognizing the complete preemptive effect of Section 301); *Smith v. Colgate-Palmolive Co.,*

943 F.2d 764, 768 (7th Cir.1991) (citing *Lueck,* 471 U.S. at 213) (Section 301 completely

preempts state-law claims in both contract and tort "so long as the claim is one in which 'state

law purports to define the meaning of the contract relationship'" under a CBA (citation

omitted)).

4

The rationale behind complete preemption under Section 301 is that uniform federal interpretation of the terms of CBAs will "promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 404 (1988); *see also United States v. Palumbo Bros., Inc.,* 145 F.3d 850, 864 (7th Cir.1998) (citing *Textile Workers Union of Am. v. Lincoln Mills of Ala.,* 353 U.S. 448, 501 (1957)) (noting that Section 301, by authorizing federal courts to fashion a body of federal law with respect to the enforcement of CBAs, "ensures uniform interpretation of such labor contracts and promotes peaceable resolution of legitimate labor disputes.").

Complete preemption does not necessarily mean that a plaintiff is without a remedy; it simply means that the remedy must be sought in federal court under federal law. *See Graf v. Elgin, Joliet & E. Ry. Co.,* 790 F.2d 1341, 1346 (7th Cir.1986) (stating that where a "worker is covered by a collective bargaining contract and therefore has a potential federal remedy, judicial or arbitrable ... that remedy is exclusive; the worker has no state remedies."); *see also Rogers v. Tyson Foods, Inc.,* 308 F.3d 785, 789 (7th Cir.2002) (holding that the existence of a remedy under federal law is an indispensable prerequisite of complete preemption).

Not every dispute concerning employment and/or collective bargaining agreements will be preempted by Section 301. *See Lueck,* 471 U.S. at 211. In *Lueck,* an employee brought a state-law tort claim for bad faith handling of disability benefit payments due under a CBA. The Court found complete preemption, holding that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of [a collective bargaining] agreement ... that claim must either be treated as a [Section] 301 claim ....or dismissed as preempted by federal labor-contract law." *Id.* at 220 (citation omitted). However, the *Lueck* Court limited its holding by stating that "not every dispute concerning employment, or tangentially involving a provision of a collective-

bargaining agreement, is pre-empted by [Section] 301 or other provisions of the federal labor law." *Id.* at 211. In an effort to "emphasiz[e] the narrow focus of [its] conclusion," the Court explained that it did not "hold that every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is preempted by [Section] 301." *Id.* at 220.

The law laid out in *Lueck* was further fleshed out in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). In *Caterpillar,* the Court did not find complete preemption because Section 301 only controls "[1] claims founded directly on rights created by collective-bargaining agreements, and ... [2] claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Id.* at 394 (quoting *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler,* 481 U.S. 851, 859 n. 3 (1987)). *Caterpillar* made clear that an employee's right to make claims under preexisting oral contracts was not abrogated just because a CBA existed at the time of the layoff. Put another way, "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." *Id.* at 396 (emphasis in original); *see also Douglas v. Am. Info. Techs. Corp.,* 877 F.2d 565, 570 (7th Cir.1989) ("If adjudication of the state-law claim does not require a court to interpret any term of a collective bargaining agreement, then that state-law claim is not preempted by section 301.").

In the instant case, Plaintiff's tortious interference claim against Defendant Henze is founded directly on rights created by a CBA and requires Plaintiff to demonstrate that his employer breached that agreement, as explained in the proceeding analysis. To determine whether Defendant Cooper – Plaintiff's former employer – breached its obligations under the CBA requires interpreting it. Accordingly, Plaintiff's tortious interference claim against

Defendant Henze is preempted by Section 301.

Plaintiff attempts, albeit unsuccessfully, to escape the preemptive force of Section 301 by arguing that his tortious interference claim turns only on the mere *existence* of a contract – here, the CBA between Defendant Cooper and Defendant District 9 – rather than on an actual *analysis* of the contract.  But to succeed on a claim alleging tortious interference with a contract, a plaintiff must establish: "(1) the existence of a *valid and enforceable contract* between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) *a subsequent breach by the other*, caused by the defendant's conduct; and (5) damages." *Dopkeen v. Whitaker,* 926 N.E.2d 794, 797 (Ill. App. 2010) (emphasis added).  Plaintiff would apparently have the Court skip completely over an analysis of the CBA's validity, enforceability, and its terms in general and just conclude at the outset that a breach has occurred.  This the Court cannot do, as it is impossible to determine whether a breach of the CBA in this case – or of any contract in any case, for that matter – occurred *without actually interpreting it*.

The Court has already acknowledged that not every dispute involving a CBA will be preempted by Section 301.  The Supreme Court made clear that plaintiffs may assert rights that are independent of those outlined in a CBA and thereby avoid Section 301's preemptive force. *Caterpillar,* 482 U.S. at 396.  In the instant case, however, the only rights that Plaintiff refers to in his pleadings are those derived from the "Labor Agreement by and between Cooper B-Line and the International Association of Machinists and Aerospace Workers District No. 9" (Doc. 32).  The amended complaint itself alleges that Defendant Henze was aware that Plaintiff was "entitled to the *rights set forth in the Labor Agreement*." (Doc. 32, p. 4) (emphasis added). Assuming, arguendo, that Plaintiff had filed suit against Henze for tortious interference with a

services contract or a sales contract, exclusive federal jurisdiction would not be so abruptly

triggered.  But to ensure the "peaceable resolution of legitimate labor disputes," it is in fact the

very *type* of contract upon which a claim is founded that necessitates exclusive federal

jurisdiction.  *Textile Workers Union of Am.,* 353 U.S. at 501.  Here, Plaintiff's claims are

founded only upon those rights included in the CBA.

      As a final matter, the Court is unable to recognize a federal tortious interference claim

under Section 301 of the LMRA.  The Seventh Circuit Court of Appeals concluded that Section

301 "creates a right of action only for breach of a collective bargaining agreement; *it is not a tort*

*statute.*"  *Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 727 (7th Cir. 2000) (emphasis added).  In

*Kimbro*, the plaintiff was a former route sales merchandiser who filed suit against his former

employer, his supervisors, a grocery store chain, and a store manager, alleging age

discrimination and tortious interference with his employment contract.  *Id*. at 725.  The

plaintiff's employment had been governed by a CBA between his employer and union.  *Id.*

      In analyzing the plaintiff's claims, the Court of Appeals made clear that when a worker is

covered by a CBA, he must litigate any legal dispute with his employer as a breach of the CBA

and "cannot sue for breach of contract under state law; nor may he recharacterize his claim as

one of tort law in order to circumvent the exclusive jurisdiction of federal law over claims for

breach of a collective bargaining agreement."  *Id*. at 725; *see also United Steelworkers of Am. v.*

*Rawson*, 495 U.S. 362, 369, 371-72 (1990); *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851,

857-859 (1987).

      The Court further explained:

> The difference between suing your employer for breach of contract and calling it
> tortious interference, and suing your supervisors for tortious interference, is one
> of form rather than of substance. For if supervisors are exposed to such liability
> the employer will either have to pay them higher wages to compensate them for

> the risk of being sued, or have to agree to indemnify them for the costs of such a suit. In either case the burden of the liability will come to rest on the employer, making it the de facto defendant in a de facto suit under state law for breach of a collective bargaining contract. And this section 301 *does not permit*.

*Kimbro,* 215 F.3d at 727 (emphasis added).  Plaintiff, therefore, cannot bring a tortious interference claim against his supervisor, Defendant Henze.

The Court of Appeals recognized the possibility that Section 301 preemption, along with a refusal to create a federal tort remedy, might in fact leave plaintiffs without a remedy. *Id.*  This recognition – along with the "few cases [that] fill the remedial gap by holding that section 301 creates a tort right against interference" with a CBA – did not alter the Court of Appeals' decision. *Id.* at 726.

Because Section 301 preempts Plaintiff's tortious interference claim, and because it creates a right of action *only* for breach of a CBA, the Court dismisses Plaintiff's tortious interference claim against Defendant Henze.

## CONCLUSION

For the forgoing reasons, the Court **GRANTS** Defendant Wayne Henze's Motion to Dismiss Count II of Plaintiff's Amended Complaint (Doc. 40).  Count II of Plaintiff's Amended Complaint is **DISMISSED with prejudice**, and the Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  May 2, 2014**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

9